Yes, Your Honor. Mr. Foster, are you with us? Yes, I am. And Mr. Sanger? I'm here. Yes, I am. Case number 20-1686 from Eastern Missouri, David Gillick et al. v. Gary Elliott et al. Right. All right, Mr. Foster. You may proceed when you're ready. Thank you, Your Honor. May it please the Court. We're here because a lower court disregarded its responsibility with regard to the party's agreement and the statutory language associated with the opportunity to resolve issues through arbitration. The federal courts, the Supreme Court, and the federal courts have long been able to handle issues involving arbitration, and that's all we, as plaintiffs, were asking for. The background of this case is important. The management trustees on this trust and the union trustees on this trust had discussed the issue of whether or not each should retain or could retain their own counsel because the concern on the part of management trustees at the time was they didn't know what they didn't know. They wanted to at least possibly get a second opinion or at least hear more detail from a different viewpoint before they made their decision as fiduciaries. So they said to the union trustees, well, how about this? How about we get a counsel and then you could get a counsel? But reasonable fees would be required and limited, and before anybody pays anything, the entire board, both union and management, would have to decide how those fees would be paid. That was discussed between the two parties. The union trustees then agreed with management trustees, well, let's start talking about arbitrators. So the parties exchanged arbitrators even, sent a few names back and forth, each side sent a few names back and forth. They could not agree. So the union trustees then said to the management trustees, well, since we can't agree upon a particular arbitrator, why don't we just ask the federal court to do that because that's been done before. So management went ahead, initiated this litigation. They had the federal court identify a mediator, an arbitrator, pardon me, an arbitrator slash umpire to decide the question. Instead of cooperating, the union trustees then filed a motion to dismiss, which surprised the heck out of management trustees because all along they said, well, who's going to do it? We volunteered to do it. The union said, go ahead and seek the federal court's permission and the appointment of a mediator, pardon me, arbitrator umpire through the federal court. So then the union filed its motion to dismiss. Without hearing any evidence on the issue, the lower court then decided through assumptions and fact finding, which was never part of this case because we never got to a summary judgment level, which somehow was inappropriate and therefore dismissed the action with prejudice, which makes it extremely difficult for the parties to move on beyond this point. What we've asked for the court of appeals here to do is send this back to the federal court with a direction to select an arbitrator slash umpire pursuant to the terms of the trust, pursuant to the terms of the statute. Section 302. Counsel, would you address, Judge Cobus here, would you address why hiring counsel for a faction of the board is not an extraordinary action in this case and therefore not subject to arbitration? Because it's just like the other cases where factions of the board said, could we have someone who's an expert in insurance tell us what's good or not good. But in those cases, did the entire board actually agree to appoint counsel for a faction? No, the faction was able to obtain it. That's the difference. In those cases, in particular, in the Drago case and the Mahoney versus Fisher case, those cases we believe are helpful to us. This is not an extraordinary issue. This is happening across the country. Union counsel gets a special counsel if they want. Management counsel gets a special counsel if they want. It is not extraordinary. It's simply to give another perspective. People say to themselves, we don't know what we don't know unless we hear about it. That's the only reason. It's not extraordinary. And if you look at even in the union's union trustees brief, if you look at page seven, they acknowledge that a significant portion of plan administration is the hiring retention and use of law firms. This isn't anything that's extraordinary. Law firms are regularly relied upon by the parties. And this was the mechanism provided for that. If the union parties to the trustees to the board don't like what's been done by the law firm that's been selected by management for advice, they can say, look, we refuse to pay that fee. They can then come back and say that wasn't reasonable, it wasn't appropriate. Counsel, was it? Did the full board agree that each faction could obtain its own counsel? We believe they did. And that's why they asked for who wants to go ask the federal court to appoint the umpire. We believe there was an understanding at the time. And that's why it surprised us that the federal court didn't open it up, at least from a summary judgment standpoint, and decided to dismiss this outright. It made no sense because the parties had a general understanding that there was agreement that we could and should obtain. So is there someplace in the record we could go to see verification of that or documentation of that fact? The case was shut down before we could ever present that, Your Honor. The case was dismissed with prejudice before we ever had a chance to present any evidence. I ask the question because, and maybe you can correct me, but my understanding was that the employer trustees brought the motion. They did. That's the only thing the district court had before it as to the history or the background of this separate counsel approach. That is correct. The court did not open it up for discovery. No discovery was provided. The ultimate facts in the background of the case weren't provided because the court dismissed it on the motion. Notice pleading is what we followed, Your Honor. We followed simple notice pleading. We didn't plead 1,001 facts that support the appointment of special counsel for management, special counsel for the union. We simply pled notice pleadings. If you look at what our pleading said, we said, look, there's a deadlock. It's over the issue of administration, which is consistent with administration of plan, and the trustees could not agree on the neutral to decide the issue. That's it. The complaint alleged every one of those three elements. It's our view that when all those prerequisites were then set forth under the LMRA, the court's only role is to appoint the neutral. The language in 302C5 makes it explicit. Congress intended trustee deadlocks to be resolved by arbitration, not by the federal judge. Essentially, the judge has now foreclosed this from ever happening again anywhere. That's the part of the problem. We were simply asking for the court to give us some indication. I'm getting out of my eight minutes. We were simply asking for the court to give us some indication of an opportunity to present this. But by the time the court ruled, it was over. We couldn't present anything. But if you look at the other issues that are presented by the union's brief, they argue that we've destroyed equal representation. We haven't. Both sides have to agree upon the payment of fees to that counsel. We didn't ask for a motion that attorneys be hired for traffic tickets, for doing trust documents, or real estate for the parties. We simply said what's reasonable. If you look at the motion that was put before the parties that the parties agreed upon would be the issue. That was never the question about how far they would go in some direction or another. This issue about them spending unnecessarily, needlessly, in an infinite manner is controlled by the fact that their fees would have to be approved by the entire board. There's the control. There was no destruction of equal representation. There was no restructuring of the trust. This is not extraordinary. So, counsel, just practically speaking, what would happen if the management members, the faction, retained counsel and then the entire board rejected payments for those fees or deadlocked on that issue? Would there be a breach of contract claimed then by the law firm against the board or against the faction? This is more of a practical question. I'm trying to gauge how much control the full board actually has over what ultimately is paid. Our firm has, in fact, been involved in those in the past, and it's a very practical resolution. Someone goes through the bill, like insurance carriers go through the bill, and said this is inappropriate, this is appropriate, we don't like this, we like this, your rate is too high, you should charge the same rate as somebody else. All that's discussed and all that plays into the part of it. And if a law firm wants to get paid, it should make sure up front, before it even starts in the process, that it has a reasonable understanding of what the general feeling is of the landscape of the board for what they want or don't want. No one should run off on a tangent and just run up a big fee for some ridiculous issue that isn't squarely before the parties. And no one would. And if they did, they shouldn't be paid anyway because they're not communicating with the client, it's what the client really wants. Remember, he who controls the purse strings controls the power. So if the entire board controls those purse strings, that board, the entire board controls that issue as well. There's an absolute control factor already built into it when the board is the only one that can approve the ultimate fees being paid. And the fact that somebody gets stiffed, I don't know where the terminology came from, I know it's in the decision, but at the end of the day, that law firm has to understand that its work has to be approved by the entire board. And they have to know that as a condition going into the process, not later on. I know the union tries to argue that there's now the union trustees trying to argue there's an ERISA violation. That really wasn't argued in the court below. We don't think it's there anyway. But I know I'm running up on my time because I'm cutting into it, I think. If someone could check my time. Four minutes and 19 seconds. I'd like to reserve that for my response. Very well. Mr. Singer. Good morning, Your Honor. My name is Jim Singer. I'm counsel for the union trustees of the Welfare Fund. The Welfare Fund is a joint labor management trust. It's governed by Section 302C5 of the Taft-Hartley Act, ERISA, and the Internal Revenue Code. And this lawsuit involves two rules that are derived from Section 302C5. The first is what is known as the equal representation rule. And the statute requires that this joint board be appointed by equal number of representatives of labor and management. And as the Third Circuit has said in its Essex industry decision, which was quoted by the district court, the equal representation rule is intended to give each side veto power over planned administration decisions. The rule has been in effect for 76 years. There are no exceptions. Pretty amazing. No exceptions. The rule has been vigorously enforced by the Eighth Circuit. The Eighth Circuit has no exceptions. The Eighth Circuit has held that the rule is triggered by the possibility of an abuse. Actual abuse is not required. And the Eighth Circuit looks beyond the trust agreement at the practices at issue. Section 302C5 also provides for the arbitration of deadlock motions between the trustees over planned administration. However, not all deadlock motions over planned administration are subject to 302C5 arbitration. I will point out to the court that the lawsuit filed by the employer trustees has its jurisdictional basis on 302C5, not the trust agreement. So the question is, what happens if a deadlock motion seeks to compel an action which violates Section 302C5 itself, the trust agreement, or ERISA? Well, decades ago, in the Farmer v. Fisher decision, the Eighth Circuit adopted the extraordinary exception, which was first articulated by the Tenth Circuit in Ader v. Hughes. The extraordinary exception is that when a deadlock motion seeks an action which is beyond the authority of the joint board under either Section 302C5 or ERISA, the trust agreement, then the motion is not subject to arbitration. The Eighth Circuit has explained in Geigel v. Flack that a faction of the joint board cannot accomplish through a deadlock motion what the joint board, acting together, is prohibited from doing. This lawsuit is a radical proposition. It would make the equal representation rule unenforceable, and it would end the extraordinary exception to 302C5 arbitration. Now, the May 2019 motion, which was deadlocked, was made by the employer trustees to permit each faction to select and retain its own legal counsel. The joint board already has fund counsel, which was hired by the joint board. So the deadlock motion authorizes the use of three law firms with three separate clients to unlimited and indefinite legal services, all to be paid by the trust. Counsel, but isn't the decision to pay and how much to pay ultimately up to the entire board? The joint board cannot say, well, that wasn't necessary because that's been delegated to the faction. If the faction agrees to a high hourly rate, what's customary? Well, if the law firm charges that rate to other clients, then bingo. The waiver of conflicts of interest, the waiver of the attorney-client privilege, what projects the law firm works on, the termination of the law firm, the replacement of the law firm, all that is now going to be delegated to the faction. It's not just the employer side. The union faction under this motion would have the right to go out and hire their own law firm and decide what projects that law firm's going to work on, and away we go. Now, the district, and I think the district court had it right that the threat to stiff a law firm is just not workable, particularly with all the authority that's been delegated to the faction. The district court focused on the key feature of the deadlock motion was that each faction would have this indefinite delegation to hire its own firm, which would be paid by the trust. Now, as explained on our brief, in the Supreme Court's AMAX call case, the Supreme Court said that joint boards are not supposed to operate this way. They're not supposed to be considering these labor management collective bargaining issues that are sometimes quasi-adversarial. And the court found the answer to what was – why this motion was – why the answer to this deadlock motion came from the Third Circuit Essex decision, where the Third Circuit said that there's a candid recognition that the relationship between the two parties can be quasi-adversarial. The district court also relied upon the Fifth Circuit Costello case, which said that the purpose of the equal representation rule is to prevent abuse, not requiring that one actually occur, and in recognition of the, quote, infinite creativity of mankind to circumvent statutory schemes. And the court held, the district court, that letting the two factions have their own law firms would violate the safeguard in 302C5, which is the equal representation rule, and would result in the possible dissipation of trust fund assets. Now, it's important to keep in mind that the money in these trusts are supposed to be used solely for the benefit of the employees to either pay benefits or pay necessary and reasonable expenses of the trust. And incredibly, in their reply brief to the court, the employer trustees say that the wastefulness, the waste of plan assets is beside the point and has nothing to do with the lawsuit. I would like the court to focus on the Fifth Circuit decision in Costello, which we believe is just about on all fours. It's the only reported case where a – there was a permanent delegation of authority with a joint board, in this case to hire employees of the trust. It was a joint apprenticeship program. And the – and it was to the employer's side. And the case goes up to the Fifth Circuit, and the Fifth Circuit says that violates the equal representation rule. And the Fifth Circuit ordered the trust agreement reform to comply with 302C5. Now, there's no difference between a trust hiring an employee and a trust hiring a law firm. Many trusts have in-house attorneys. Many of them have outside law firms. Sometimes they have both. But the point is that this delegation violates the equal representation rule. The employer trustees rely on two cases. The first is a unreported district court case out of New York called Messino, where there was a deadlock motion to terminate a specific law firm that had been hired to represent the joint board. This has nothing to do with our case. The second was the Second Circuit Mahoney case, where there was a deadlock motion to not pay the fee of an insurance agent who had been hired by the joint board. Again, nothing to do with our case. There is no reported case that has permitted an indefinite delegation to a faction to hire either service providers or employees. Counsel, I have a question for you. What if, instead of referring to the payment of fees retained by either the management or the labor block of trustees, what if an individual trustee on his or her own consulted outside counsel for their own protection and then asked the full board to approve the fees and to pay the fees? Is that a different question or does it still fall into the category of improper action that you're describing? Your Honor, I think that's an entirely different question. Then the decision is before the joint board. The joint board would say, why did you do this? Let's see the work product. It's a problem where it isn't really workable for every one of these trustees to go out and hire their own law firm. Maybe there are circumstances where it's justified and then the joint board could make the decision, okay, under these limited circumstances, this was necessary and it will serve the interest of the trust and we'll pay it. Or they could say, we just can't run the trust this way where each one of you run out and talk to your own law firm. There's got to be a more organized, you've got to first bring the issue to the board. Let's get an opinion from fund counsel and then we as the board will decide if it's necessary. So it's the unlimited delegation of authority that's at the root of the problem here and that violates the rule. It is true that these trusts may need different law firms with different expertise, but these law firms will report to the board. This notion that there's some practice out there that factions hire their own law firms is preposterous and they cite to no authority. This notion that the union trustees somehow consented to separate, that the factions could have their own legal counsel is preposterous. It's not pled in the complaint. There's absolutely no evidence of that. And even if it occurred, it would violate the equal representation rule. The union trustees couldn't agree to the Dudlock motion. It would violate the rule. And when you look at the scope of their arguments, well, first they argue, okay, well, the district court dismissed it without any facts. Well, they could have pled some of these facts that Mr. Foster is alluding to, but there is no set of facts that would make the Dudlock motion in compliance with 302c5. The district court had every right to look at that motion, apply the existing law under 302c5 and dismiss the case. And you could come up with a lot of imaginary facts, but ERISA has remedies for breaches of fiduciary duty. And violating the equal representation rule is not one of them. And, you know, their argument that the Demassais case divested the federal courts of the authority to enforce the equal representation rule, there's no case supporting that. The one court considered it, the third circuit rejected it. Their argument that they're subject to ERISA fiduciary standards and therefore don't worry about the equal representation rule, that's just a warm over of this Demassais argument. It would make the equal representation rule unenforceable. If you look at the trust agreement, your honors, it's got the equal representation rule hardwired into it. There's a specific provision, section 6.13, that says there can be delegations to subcommittees of the board, but the subcommittee has to operate in compliance with the equal representation rule. This idea that there's somehow a legal services exception to the rule is ridiculous. It's not supported by any cases. So my time is up. I want to respect that. Thank you. Thank you, Mr. Singer. Mr. Foster, we'll hear your rebuttal. My distinguished colleague and I used to share an office at the National Labor Relations Board a few decades ago. It's good to hear him again. It's like sitting across from him some 35 years ago. But the point he makes is not real. This idea of there not being a quote delegation or arguing about a delegation, there is no delegation. The entire board will review the scope of the bill, the scope of the fee, the amount of the fee, the amount of the bill ever paid to whatever counsels retained by either end or both sides. And the entire board would be allowed to, be permitted to, and could require and should require that whatever is provided to one faction of the board is also provided to the other. So there's open discussion. Transparency is a common popular practice. Isn't that mostly an ethereal argument? I mean, if in fact the board refused to pay the lawyers, wouldn't they have some claim in quantum merit at least, if they don't have a contract claim, for the value that they have given to the board and the nature of their advice? And whether you approve it or not, ultimately, isn't some court likely to require it to be paid? No, because that dispute, your honor, would then go to an arbitration because it would be a deadlock as well. Just like all the facts that you heard Mr. Singer articulate here today are facts which should be put before an arbitrator who can be identified by the federal court judge, but put before an umpire to hear what could be the harm. So the lawyers will absolutely be paid, no questions asked, regardless of what the board decides, right? I mean, as a practical matter, just think about it. How often do people say, yeah, I really want to pay the other guy's lawyer. That's what I want to do, right? I have been privy to conversations where people have said, and boards with their separate counsel, where they said, look, we understand they work, we understand they should get paid, but they should get paid what's the reasonable value of their services, what's reasonable and customary, and nothing more. They shouldn't receive a premium. And there are some lawyers out there who like to say, here's my bill for a lot more per hour than otherwise they can see on the planet, but they do it. And they're told to knock it back down. Insurance carriers regularly do this, where clients are retained by individuals and someone says, well, you've got now this employment practices liability insurance. Your insurance carrier will tell you how much you get paid per hour, how much you get paid for this, when you can't make a phone call, when you can't go to the bathroom, when you can't pick up a pencil. All that happens in this day and age. Lawyers are regularly told that they're not going to get paid what they think they might get paid in some circumstances. It's not a surprise. And the idea that this is somehow going to tie up the fund in litigation isn't real. It's a perception that doesn't match reality. The issue that the parties want to try to seek counsel on is the idea we spoke of before, when a member of that board of trustees says, I don't know what I don't know, and I'm not hearing it from the fund counsel generally. I'd like to be able to ask some questions particularly. One good example that's coming up today is right now among various trusts is, well, do we seek federal funds of the statute that just got signed off by President Biden? Do we seek those or do we have enough money coming in? If we seek that, what's the consequences of seeking that? Those are broad, specific questions, and each fund has to deal with that nowadays. And management trustees have the right, at least under these circumstances, we believe, and we can argue that before an arbitrator, to at least pertain counsel, as would the union trustees likewise as well. This is not an unlawful delegation. It's not a disruption of the balance. It's not a disruption of equal identification rule of equal rule. And when all these prerequisites are looked at for purposes of what we ask for, we simply ask for an arbitrator. And that's where all these factual arguments ought to go. But counsel, if each faction of the board has separate counsel, doesn't that work an alteration or a tampering with or an endangering of this rule or this requirement of equality on the board? Because you've got the possibility of each faction receiving different advice. And you also have, I'm going over my time, if I could be permitted. Go ahead. You also have the ability of the entire board to resolve the issue. And that's why you have an entire board to resolve the issue. And if there's a deadlock on the advice, if there's a deadlock on what should or shouldn't be done, that likewise could go to an umpire. That's the beauty of the process. It's built into the trust. It's built into the statute. Where there are differences between the parties on issues, they can go to an umpire. They can go to arbitration. And parties regularly do that in these trusts. All right. Thank you, Your Honor. Appreciate your time. And Judge Shepard, I'm envious. You've got some sunshine. We haven't had any for a few minutes. Yes, it is. I have a transom up high that there are no blinds. And for a few minutes each morning, I'm blinded here. So, anyway, I persevere. Thank you, counsel, for your arguments. The case has been well argued. The case is submitted and a decision will be issued in due course. And you may stand aside.